## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

INDIGO AG, INC. and INDIGO
MARKETPLACE, LLC,

      **Plaintiffs,**

      **v.**

SUMMIT AG, LLC, TIM BARKER, and AG
ASTRA, LLC,

      **Defendants.**

**Case No. 2:23-CV-02036-JAR-GEB**

## MEMORANDUM AND ORDER

Plaintiffs Indigo Ag, Inc. and Indigo Marketplace, LLC bring this action against

Defendants Summit Ag, LLC, Tim Barker, and Ag Astra, LLC, alleging breach of contract,

breach of the duty to indemnify, and tort claims for negligent and fraudulent misrepresentation.

Presently before the Court is Defendants' Motion to Dismiss (Doc. 9) pursuant to Fed. R. Civ. P.

12(b)(6). Before reaching the sufficiency of Plaintiffs' Complaint,[1] however, the Court

determines as a threshold matter whether the case should be transferred under a forum selection

clause in the relevant contracts. For the following reasons, the Court orders that the case be

transferred to the United States District Court for the District of Massachusetts, under 28 U.S.C.

§ 1404(a), as provided by the valid and mandatory forum selection clauses applicable here.

Accordingly, Defendants' motion is denied as moot without prejudice to renewal in the District

of Massachusetts.

---

[1] Doc. 1.

I.      **Background**

A.      **Facts**

Plaintiff Indigo Ag., Inc. ("Indigo Ag") is a Delaware corporation that does business in Kansas and has its principal place of business in Massachusetts.  Plaintiff Indigo Marketplace, LLC ("Indigo Marketplace" and, together with Indigo Ag, "Plaintiffs" or "Indigo") is a limited liability company organized under the laws of Delaware with its principal place of business in Massachusetts.  The sole member of Indigo Marketplace is Indigo Ag.  Indigo is an agricultural technology company that has developed plant-focused microbial technologies, formulations, and products for the treatment of seed to improve agronomic yield and quality.  As part of its business, Indigo offered a digital platform to growers and buyers permitting them to interact and transact in a grain and transportation marketplace, as well as a carbon credits marketplace.  In carrying out its business, Indigo used grain marketing advisors to facilitate Indigo's efforts to connect growers, who are clients of the grain marketing advisor, with buyers, to purchase crops while managing pricing risks.

Defendant Ag Astra, LLC ("Ag Astra") is a limited liability company with its principal place of business in Kansas.  Defendant Tim Barker, a resident and citizen of Kansas, is the only member with five percent or more of the capital in Ag Astra and has undertaken many of the actions complained of in the Complaint on behalf of Ag Astra as both signatory and principal for it.  Defendant Summit Ag, LLC ("Summit Ag" and, together with Ag Astra and Barker, "Defendants") is a limited liability company with its principal place of business in Kansas and, like Ag Astra, Barker is the only member with five percent or more of the capital in Summit Ag and has undertaken many of the actions complained of in the Complaint on behalf of Summit Ag as both signatory and principal for it.

2

Between 2019 and 2020, various of the parties entered into a number of contracts, all relating to the sale and delivery of crops.  The first of these contracts is the Grain Marketing Advisor Agreement ("GMAA") entered into on September 30, 2019 between Barker, on behalf of Ag Astra, and Indigo, whereby Ag Astra agreed to serve as a grain marketing advisor to sellers of crops on Indigo Marketplace.[2]  Then, in November 2020, Ag Astra and Indigo entered into an addendum to the GMAA titled the Strategic Growth Addendum ("SGA") whereby Ag Astra could request early payments of fees due to it by Indigo.[3]  Also in November 2020, Indigo Marketplace and Summit Ag entered into a Marketplace Seller Agreement ("MSA") which governed Summit Ag's sale of crops on Indigo Marketplace.[4]  On November 9, 2020, and again on November 19, 2020, Barker entered into agreements on behalf of Ag Astra titled Managed Pricing Program Agreements (referred to collectively as the "MPP Agreements") with Indigo, whereby Ag Astra agreed to refer crop sellers to Indigo's Managed Pricing Program.[5]  Finally, between November and December 2020, Plaintiffs and Defendants entered into six Managed Pricing Program Addendums (referred to collectively as the "MPP Addendums"), each governing the sale and delivery of various crops.[6]

Several provisions of the various contracts are relevant to the Court's analysis here.  First, by its terms, the MSA governs all of Summit Ag's transactions on the Indigo Marketplace[7] and each addendum to the MPP Agreements explicitly states that it is also subject to the terms and conditions of the MSA, except that in the event of a conflict with the terms of the MSA, the

---

[2] Doc. 1-12.

[3] Doc. 1-13.

[4] Doc. 1-3.

[5] Doc. 1-4.

[6] Docs. 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11.

[7] Doc. 1-3.

terms of the MPP Addendum will prevail.[8]  Second, the MSA includes a "Dispute Resolution"

clause, which provides that:

> [T]he Agreement and any addendum, or transactions under the
> Agreement, the Indigo Marketplace Platform or through Indigo
> Marketplace will be subject to National Grain & Feed Association
> ("NGFA") trade rules (the "Rules") in effect on the date thereof,
> and any dispute will be referred to NGFA arbitration in accordance
> with the Rules.  The parties agree that the sole forum for resolution
> of all disagreements or disputes relating to crop transactions
> arising under the Agreement, the Indigo Marketplace or the Indigo
> Marketplace Platform between [Summit Ag] and Indigo shall be
> arbitration proceedings before the NGFA pursuant to the Rules.
> The decision and award determined by such arbitration shall be
> final and binding upon the parties and judgment upon the award
> may be entered in any court having jurisdiction thereof.  This
> Agreement shall be governed by, and construed in accordance
> with, the laws of the State of Tennessee.[9]

Finally, the MPP Agreements and the GMAA each contain a dispute resolution clause that

conflicts with the one found in the MSA, but that explicitly "supersedes all prior understandings,

written or oral."[10]  Each provides that they:

> [S]hall be governed by the laws of the Commonwealth of
> Massachusetts, without reference to any conflict of laws rule.  Any
> dispute arising under or relating to this Agreement must be brought
> in the state or federal courts in the Commonwealth of
> Massachusetts.   The parties irrevocably consent to personal
> jurisdiction in the Commonwealth of Massachusetts[.][11]

Therefore, the MPP Agreements and the MPP Addendums (as addendums to the MPP

Agreements), as well as the GMAA and the SGA (as an addendum to the GMAA) are subject to

---

[8] Docs. 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11.

[9] Doc. 1-3 at 3.

[10] Doc. 1-4 at 3, 10; Doc. 1-12 at 5.

[11] *Id.*

a forum selection clause and choice of law provision, both calling for the Commonwealth of Massachusetts.

### B.     Procedural Posture

Plaintiffs brought the present lawsuit against Defendants alleging five counts.[12]  In Count One, Plaintiffs assert a breach of contract claim against Summit Ag for breach of the MSA, the MPP Agreement, and the MPP Addendums.  In Count Two, Plaintiffs assert a breach of the duty to indemnify under the MSA and the MPP Agreements against Ag Astra and Summit Ag.  In Count Three, Plaintiffs assert a claim of fraudulent misrepresentation related to the MSA and various of the MPP Addendums against Ag Astra and Summit Ag.  In Count Four, Plaintiffs assert a claim of negligent misrepresentation related to the MSA and various of the MPP Addendums against Ag Astra and Summit Ag.  Finally, in Count Five, Plaintiffs assert a breach of contract claim against Ag Astra for breach of the MSA, the MPP Agreement, the MPP Addendums, as well as the GMAA and the SGA.

Defendants subsequently filed a partial motion to dismiss.  Defendants' motion seeks to dismiss Count Two in its entirety and seeks to dismiss only the claims in Counts One and Five that relate to three of the six MPP Addendums.[13]  Defendants' motion does not seek dismissal of Counts Three or Four, nor does it seek dismissal of the claims in Counts One and Five that relate to the remaining three MPP Addendums,[14] the MSA, the GMAA, or the SGA.

After Defendants' motion to dismiss was fully briefed, the Court issued a Notice and Order to Show Cause directing Plaintiffs to show cause as to why this matter should not be

---

[12] Doc. 1.

[13] Doc. 9.  The three MPP Addendums that are relevant to Defendants' motion to dismiss are MPP Nos. 2004, 2012, and 2017.

[14] The remaining three MPP Addendums that are not at issue in Defendants' motion to dismiss are MPP Nos. 2003, 2009, and 2013/2013-1.

transferred to the United States District Court for the District of Massachusetts and why this dispute should not be governed by the laws of the Commonwealth of Massachusetts as opposed to the laws of the state of Kansas, as cited by the parties in their briefs, given the forum selection clause and choice of law provision found in the MPP Agreements and the GMAA.[15]  In response to the Court's Notice and Order to Show Cause, the parties filed a Joint Response and a Joint Stipulation.[16]  In these filings, the parties informed the Court that they had jointly stipulated "to this Court's jurisdiction over all claims in this matter" as well as to the fact that "Kansas law applies regarding all claims in this matter."[17]  In addition, the parties urged the Court to not *sua sponte* dismiss or transfer the case, contending that due to the location of the events leading to the claims and the location of Defendants, "this District is best equipped to promote 'just, speedy, and inexpensive determination.'"[18]

## II.    Discussion

To determine whether this case should be transferred to the District Court for the District of Massachusetts under 28 U.S.C. § 1404(a), the Court must first consider the scope of the forum selection clause, whether it is mandatory or permissive, and whether it is enforceable.  For the reasons set forth below, the Court finds that the disputes at issue here are within the scope of the forum selection clauses, that the clauses are mandatory rather than permissive, and that they are enforceable.  Therefore, the Court next turns to whether transfer under § 1404(a) is the appropriate resolution and, for the reasons explained below, the Court finds that it is.

---

[15] Doc. 24.

[16] Docs. 27; Doc. 26.

[17] Doc. 27 at 1.

[18] *Id*. at 2 (quoting Fed. R. Civ. P. 1).

### A.      Legal Standard

While forum selection clauses are generally enforced through a motion to dismiss for

*forum non conveniens* or to transfer under 28 U.S.C. 1404(a), courts in the Tenth Circuit have

held that a district court may *sua sponte* transfer a case to the contractually chosen forum, so

long as the parties have had an opportunity to be heard.[19]  The federal statute governing transfer

of venue provides: "For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have

been brought."[20]  In a case that does not involve a valid, mandatory forum selection clause, "a

district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate

both the convenience of the parties and various public-interest considerations."[21]  However, the

United States Supreme Court has explained that in a case that does involve a valid, mandatory

forum selection clause, district courts must "adjust their usual § 1404(a) analysis in three

ways."[22]

First, "the plaintiff's choice of forum merits no weight."[23]  Instead, "as the party defying

the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum

---

[19] *See, e.g., Kufahl v. Spaulding Decon Indus.*, No. 19-1036-EFM-GEB, 2019 WL 12313530, at *2 (D. Kan. July 11, 2019) (noting that "a district court may transfer a case *sua sponte* under § 1404(a)," so long as the parties have had an opportunity to be heard); *Trout v. Organizacion Mundial de Boxeo, Inc.*, No. 16-00097, 2016 WL 10179368, at *6 (D.N.M. Aug. 3, 2016) ("A district court may transfer a case under § 1404(a) *sua sponte* after giving the parties an opportunity to be heard."); *Tripoli Mgmt., LLC v. Waste Connections of Kan., Inc.*, No. 09-cv-01767, 2010 WL 845927, at *8 n.18  (D. Colo. Mar. 9, 2010) ("The Court can [transfer] *sua sponte*.  Section 1404(a) does not limit the Court's ability to act to those situations in which a party requests such action.  In contrast, consider section 1404(b), which allows a court to transfer a case from one division to another within district, but only '[u]pon motion, consent, or stipulation of all parties.'").

[20] 28 U.S.C. § 1404(a).

[21] *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (footnote omitted).

[22] *Id*. at 63.

[23] *Id*.

for which the parties bargained is unwarranted."[24]   Second, "a court evaluating a defendant's

§ 1404(a) motion to transfer based on a forum-selection clause should not consider arguments

about the parties' private interests."[25]   "When parties agree to a forum-selection clause, they

waive the right to challenge the preselected forum as inconvenient or less convenient for

themselves or their witnesses, or for their pursuit of the litigation."[26]   "A court accordingly must

deem the private-interest factors to weigh entirely in favor of the preselected forum."[27]   "As a

consequence, a district court may consider arguments about public-interest factors only."[28]   And,

because "those factors will rarely defeat a transfer motion, the practical result is that forum-

selection clauses should control except in unusual cases."[29]   Third, "when a party bound by a

forum-selection clause flouts its contractual obligation and files suit in a different forum, a

§ 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a

factor that in some circumstances may affect public-interest considerations."[30]

Before transferring a case pursuant to § 1404(a), the district court must determine

whether the forum selection clause at issue is valid, is mandatory rather than permissible, and is

enforceable.  In the Tenth Circuit, forum selection clauses are "presumptively valid."[31]   "Such

clauses are unenforceable [] 'if enforcement would contravene a strong public policy of the

---

[24] *Id.*

[25] *Id.* at 64.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* (citations omitted).

[31] *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1136 (D. Kan. Apr. 18, 2022) (citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992)).

forum in which suit is brought, whether declared by statute or by judicial decision.'"[32]

Alternatively, "a party resisting enforcement carries a heavy burden of showing that the

provision itself is invalid due to fraud or overreaching or that enforcement would be

unreasonable and unjust under the circumstances."[33]

### B.   The Forum Selection Clause[34]

#### 1.   Scope

As set forth above, there are two conflicting dispute resolution provisions throughout the

many contracts between the parties here.  The MSA, which also governs the MPP Agreements

and the MPP Addendums, contains an arbitration provision calling for arbitration before the

NGFA, and calls for the application of Tennessee law.  Both the MPP Agreements and the

GMAA, however, contain forum selection clauses requiring disputes to be brought in a state or

federal court in the Commonwealth of Massachusetts and for the application of Massachusetts

law.  Based on the Court's understanding, the GMAA and subsequent SGA are wholly separate

from and concern a different transaction between the parties than the MSA, MPP Agreements,

and MPP Addendums—the GMAA and SGA governed Ag Astra's agreement to give advice to

other sellers on the Indigo Marketplace, whereas the MSA, MPP Agreements, and MPP

---

[32] *Bowen Eng'g, Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

[33] *K.R.W. Constr., Inc.*, 598 F. Supp. 3d at 1136 (quoting *Riley*, 969 F.2d at 957).

[34] In cases such as this where the contract at issue contains both a choice of law provision and a forum selection clause that may "implicate both state substantive law and federal procedural law, courts have struggled with which law to apply."  *Irsik & Doll Feed Servs., Inc. v. Roberts Enters. Invs., Inc.*, No. 6:16-1018-EFM-GEB, 2016 WL 3405175, at *3 (D. Kan. June 21, 2016).  However, generally speaking, courts will "evaluate forum selection clauses according to ordinary principles of contract interpretation." *Unitednet, Ltd. v. Tata Commc'ns Am., Inc.*, No. 1:21-cv-01081, 2022 WL 1554806, at *5 (D. N.M. May 17, 2022).  "A federal court with jurisdiction based on diversity generally applies the substantive law, including choice of law rules, of the State in which it sits." *Id*. (first citing *Gerson v. Logan River Academy*, 20 F.4th 1263, 1270 (10th Cir. 2021) and then citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Therefore, for purposes of this Memorandum and Order, the Court applies Kansas substantive law.

Addendums governed Defendants' sale of goods on Indigo Marketplace and to Indigo.

Moreover, unlike the MPP Agreements and MPP Addendums, neither the GMAA nor the SGA

state that they are governed by the MSA.  Therefore, there is no issue reconciling the forum

selection clause in the GMAA with the arbitration provision in the MSA—the forum selection

clause in the GMAA governs disputes regarding it and the SGA (i.e., part of Count 5).

The conflict between the dispute resolution provisions in the MSA and the MPP

Agreements can also be reconciled.  As a matter of general contract interpretation, the Tenth

Circuit has held that "[w]here 'two contracts are made at different times, [but where] the later is

not intended to entirely supersede the first, but only modif[y] it in certain particulars[,] [t]he two

are to be construed as parts of one contract, the later superseding the earlier one wherever it is

inconsistent therewith.'"[35]  Here, it is clear by its text that the section of the MPP Agreements

containing the forum selection clause was intended by the parties to modify or supersede all

previous understandings between the parties, which would include the arbitration provision in

the MSA.[36]  For that reason, the Court finds that the forum selection clause in the MPP

Agreements calling for disputes to be brought in a state or federal court in the Commonwealth of

Massachusetts governs the disputes in this case that pertain to those agreements (found in all five

Counts).

---

[35] *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1211 (10th Cir. 2009) (quoting *Hawes v. Lux*, 294 P. 1080, 1081 (Cal. Dist. Ct. App. 1931); and citing *San Diego Const. Co. v. Mannix*, 166 P. 325, 326 (Cal. 1917)); *see also Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010) ("If two successive contracts are in conflict, the later supersedes the earlier one.") (citing *Fleetwood Enters., Inc. v. Coleman Co., Inc.*, 161 P.3d 765, 774 (Kan. Ct. App. 2007)).

[36] The fact that the forum selection clause here is mandatory, as set forth *infra*, also counsels in favor of it superseding the earlier arbitration provision. *See, e.g., Shehadeh v. Horizon Pharma USA, Inc.*, No. 20-cv-8107, 2021 WL 4176254, at *2 (S.D.N.Y. Sept. 14, 2021) (noting that "only a mandatory forum selection clause would demonstrate specific intent to supersede" an earlier arbitration agreement) (internal citations omitted).

Assuming, arguendo, that the Court found that the forum selection clause in the MPP Agreements did not supersede the arbitration provision in the MSA, the two provisions could still be reconciled such that both provisions would govern.  Indeed, where "a forum-selection clause [that] designates a forum other than the one that can lawfully compel arbitration, that bargained-for forum remains the appropriate venue for a party seeking to compel arbitration, if only to earn the right to bring the suit elsewhere."[37]  In other words, it would be possible for both the arbitration provision in the MSA and the forum selection clauses in the MPP Agreements to govern these disputes—even if the bargained-for forum was only used to determine the arbitrability of the matter.

### 2.      Mandatory or Permissive

A forum selection clause is mandatory, rather than permissive, "when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language[.]"[38]  In this case, the forum selection clauses state that "[a]ny dispute arising under or relating to this Agreement *must* be brought in the state or federal courts in the Commonwealth of Massachusetts."[39]  The use of the word "must" in these clauses indicate that the parties intended for there to be exclusive jurisdiction in a state or federal court in the Commonwealth of Massachusetts.[40]  Therefore, the Court finds that the forum selection clauses at issue here are mandatory rather than permissive.

---

[37] *Presb. Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1209 (D.N.M.2015).

[38] *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 927 (10th Cir. 2005).

[39] Doc. 1-4 at 4 (emphasis added); Doc. 1-12 at 5 (emphasis added).

[40] *See, e.g., Meyers v. Keycorp*, No. 07-1166, 2008 WL 2557991, at *2 n. 2 (W.D. Okla. June 23, 2008) ("There is no question this provision is mandatory; it specifies that a court action 'must' be brought in the county where Defendant maintains its principal office.").

### 3.      Enforceability

Next, the Court must determine whether the mandatory forum selection clauses at issue here are enforceable.  The Court finds that they are.  As noted above, forum selection clauses are presumptively valid.  They are unenforceable if, for example, enforcement "would contravene a strong public policy of the forum in which suit is brought[.]"[41]  Although the Court gave them ample opportunity to do so when it issued the Notice and Order to Show Cause, neither party pointed the Court to any public policy in this forum that would be contravened by enforcing the forum selection clauses.

In the Court's view, public policy would actually be contravened by not enforcing the forum selection clauses here.  The parties have failed to point to, and the Court has not found, any authority from this Circuit that would support the parties' ability to, on one hand, stipulate to disregard portions of contracts and, on the other hand, ask the Court to interpret the remaining portions thereof.  Thus, the Court is satisfied that public policy in this forum would not be contravened by enforcing the forum selection clauses and that, in fact, public policy may even be furthered by enforcing them.

Alternatively, forum selection clauses can be found unenforceable if "the resisting party shows the clause is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances."[42]  Here, both parties are resisting the enforcement of the forum selection clauses, but neither has shown that they are invalid for any reason or that enforcing them would be unreasonable or unjust.  Rather, the only justification for

---

[41] *Bowen Eng'g, Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015).

[42] *Williams v. Ascension Health Long-Term Disability (Ltd) Plan*, No. 16-1361-JTM, 2017 WL 1540635, at *1 (D. Kan. Apr. 28, 2017) (first citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992); and then citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972)).

disregarding the forum selection clauses provided by the parties in their Joint Response to Order

to Show Cause is convenience.  But "mere inconvenience alone is insufficient to avoid

enforcement of the clause."[43]  To be sure, "[o]nly a showing of inconvenience so serious as to

foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice,

would be sufficient to defeat a contractual forum selection clause."[44]  Because there is no such

showing here, the Court finds the forum selection clauses to be enforceable.

C.      **Transfer is the Appropriate Method to Enforce the Forum Selection Clause**

Having found that the forum selection clauses govern the claims at issue in this case, and

that they are mandatory and enforceable, the Court turns to whether this is the type of

extraordinary or unusual case that warrants departure from the general rule that forum selection

clauses are controlling, or if the Court should transfer the case to the bargained-for forum.

As set forth above, in the presence of a valid forum selection clause, district courts adjust

their usual § 1404(a) analysis by disregarding the plaintiff's choice of forum, deeming the

private-interest factors to weigh entirely in favor of the preselected forum, and considering only

the public-interest factors.  The Supreme Court made clear in *Atlantic Marine* that because the

public-interest factors will rarely override a valid forum selection clause, "the practical result is

that forum-selection clauses should control except in unusual cases."[45]  Applying these factors

here, first, the Court disregards Plaintiffs' (and, coincidentally, Defendants') choice of forum of

the District of Kansas because it is not the forum selection clauses' agreed-upon forum.[46]

---

[43] *Id.* at *3 (citing *Mozingo v. Trend Pers. Servs.*, No. 10-4149-JTM, 2011 WL 3794263, at *2 (D. Kan. Aug. 25, 2011)).

[44] *Riley*, 969 F.2d at 958 (citing *Carnival Cruise Lines*, Inc., v. Shute, 499 U.S. 585, 595 (1991)).

[45] *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 51 (2013).

[46] The Court acknowledges that in the Joint Stipulation, the parties jointly stipulated to having this case heard in the District of Kansas and having the laws of Kansas govern the disputes.  While courts cannot overlook stipulations altogether, "no rule of law requires a court to base the resolution of the case on stipulations of the parties."  *O'Connor v. City & Cty. of Denver*, 894 F.2d 1210, 1226 n.12 (10th Cir. 1990).  Indeed, "the district court

Second, the Court does not consider arguments about Plaintiffs' (or Defendants') private interests, such as convenience.  Rather, it will only consider the relevant public-interest factors.

The party resisting the forum selection clause bears the burden to show that the "public-interest factors overwhelmingly disfavor a transfer."[47] Such factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"[48]  Here, both parties are resisting the forum selection clause, yet neither party even attempted to show in their Joint Response to Order to Show Cause that any of the public-interest factors disfavor transferring the case to the District Court for the District of Massachusetts.  The parties' "failure to address these factors thus effectively decides the issue."[49]

But even if either of the parties had attempted to make such a showing, the Court is not persuaded that "this lawsuit falls into the category of 'the most exceptional cases' where a court should disregard a forum selection clause."[50]  This case involves entities with their principal places of business in Massachusetts—the bargained-for forum—and under the choice of law provision that accompanies the forum selection clause, Massachusetts law will govern the disputes in this case.[51]  A Massachusetts court would be better suited to resolve those disputes.[52]

---

is vested with broad discretion in deciding whether to enforce [the] parties['] stipulation or not."  *Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1106 (10th Cir. 2005).

[47] *Atl. Marine Constr. Co., Inc*., 571 U.S. at 67.

[48] *Id*. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[49] *Nathanson v. Tortoise Cap. Advisors, L.L.C.*, No. 2:22-cv-02328-HLT-RES, 2023 WL 1434292, at *5 (D. Kan. Feb. 1, 2023).

[50] *Kompass Kapital Funding, LLC v. Sage Surfaces, LLC*, No. 22-2522-DDC-TJJ, 2023 WL 3159605, at *7 (D. Kan. April 28, 2023) (citing *K.R.W. Constr., Inc.*, 598 F. Supp. 3d at 1143 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 63)).

[51] As set forth above, both of the governing dispute resolution provisions maintain that any dispute regarding the agreements "shall be governed by the laws of the Commonwealth of Massachusetts, without reference to any conflict of laws rule."  Doc. 1-4 at 3, 10; Doc. 1-12 at 5.

[52] *Nathanson*, 2023 WL 1434292 at *5.

Although Defendants are based in Kansas and some claims may have a factual link to Kansas, "this is not sufficient grounds to discard the forum-selection clauses," which "control in all but the most exceptional cases."[53]  The Court finds that this case, which is still in the very early stages of litigation, is not such an exceptional case.

For these reasons, the Court finds that neither party has shown that the Court should disregard the valid, mandatory forum selection clauses.  Having given the parties an opportunity to be heard, the Court in its discretion enforces the forum selection clauses at issue here and *sua sponte* transfers this action under 28 U.S.C. § 1404(a) to the United States District Court for the District of Massachusetts.

**IT IS THEREFORE ORDERED BY THE COURT** that this action be transferred to the United States District Court for the District of Massachusetts.  The Court denies Defendants' Motion to Dismiss (Doc. 9) as moot without prejudice to refiling in the District of Massachusetts.

**IT IS SO ORDERED.**

Dated: June 8, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[53] *Id.* at * 5 (citing *Atl. Marine Constr. Co.*, 571 U.S. at 63–64); *see also K.R.W. Constr., Inc.*, 598 F. Supp. 3d at 1144 (rejecting the plaintiff's argument that the State of Kansas had "a strong interest in resolving [the] dispute because it involve[d] real property located in Kansas", because "[a]lthough the property is located in Kansas, there are no issues involving the property, and instead the issue is over the appropriate amount due under the contract.").